16662

TERWILLIGER v. MARION

(72 S. E. (2d) 165)

186

*Messrs. Williams & Busbee,* of Aiken, *for Appellant,*

*Messrs. Henderson, Salley & Cushman,* of Aiken, *for Respondent.*

Aug. 22, 1952.

FISHBURNE, Justice.

This action was commenced in December, 1947, by the plaintiff (Appellant here), Hazel O. Terwilliger, against the respondent, Irene Marion, and numerous other defendants. The object of the suit was to exclude all defendants from any interest in the real estate described in the complaint as containing 400 acres of land located in Aiken County. This property originally belonged to the Oliveros-Holley Land Company, a corporation organized by L. M. C. Oliveros, father of appellant, and W. W. Holley, for the purpose of subdividing it into lots and selling the lots as a residential development.

A large number of defendants who had purchased lots defaulted, and thereafter those who answered were by consent substituted as individual defendants, the respondent being one of them.

This respondent, Irene Marion, alleged that she was the owner in fee of Lot 62 in Block 6 on a plat of "Aiken Heights," (the name of the development) made in 1907 by P. S. Norris, Civil Engineer, for the Oliveros-Holley Land Company. She alleged and proved that she derived title thereto under the terms and provisions of the will of her father, Jerry Williams, deceased, which will, it is admitted, was duly admitted to probate in the office of the Probate Court for Aiken County; and that her father, Jerry Williams, became vested with title to the lot in question by deed to him from the Oliveros-Holley Land Company of date November 19, 1908, and duly recorded in the office of the Clerk of Court for Aiken County. The respondent denied in her answer that appellant had any right, title or interest by virtue of adverse possession or otherwise, in the lot described; and alleged that all taxes on the property had been paid by her and her predecessors in title.

Upon the conclusion of the testimony, the trial court overruled a motion made by appellant for directed verdict in her favor, the basis of the motion being that the evidence is uncontradicted that she and her predecessors in title had been in adverse possession for more than ten and twenty years before the commencement of the action. Upon trial, the jury found for the defendant, and the appellant is now appealing from this adverse verdict.

Error is first assigned because the trial judge charged the jury:

"* * * I charge you in that connection that the testimony of the witnesses, although uncontradicted, is not binding upon you. You have a right to determine it in the light of all the circumstances and give it such weight as you think it is entitled to."

We see no error in this instruction.

The court in *Green v. Greenville County,* 176 S. C. 433, 180 S. E. 471, 473, quoted with approval the general rule expressed in 26 R. C. L., at Page 1069:

"* * * The fact that evidence is not contradicted by direct evidence does not render it undisputed, as there still remains the question of its inherent probability and the credibility of the witness or his interest in the result. To justify a Court in instructing a jury that a witness has told the truth, and in directing a verdict based on the truthfulness of his evidence, there must be nothing in the circumstances or surroundings tending to impeach the witness or to throw discredit on his statements. If there is anything tending to create distrust in his truthfulness, the question must be left to the jury."

Nor did the court commit error in overruling appellant's motion for directed verdict *non obstante veredicto,* or a new trial.

Appellant's case, as shown by the record, depends upon the establishment of adverse possession with reference to this one lot which is located in the large tract of 400 acres described in the complaint. It is needless to make any lengthy review of the evidence here. On neither side, with reference to the question of possession, was the evidence very precise or definite. However, in our opinion, the testimony made an issue to be passed upon by the jury.

Error is assigned on the ground that the court did not correctly declare the law as to adverse possession. The record tends to show that after this large tract of land had been subdivided and several hundred lots conveyed away—1907—1913—Mr. and Mrs. Oliveros planted and cultivated 40 or 50 acres,—the cleared portion; and exercised certain acts of possession over the whole tract until the death of both, respectively in 1936 and 1938. "No Trespass" signs were posted in various places on the property. The appellant lived with her parents, and had resided

on this place all of her life, and during the lifetime of her parents she assisted them in its management. After their death, according to her contention, she remained in exclusive possession thereof, renting it out, cutting wood and trees, and exercising other acts of ownership common to property of this type. Her main contention is that she acquired title under the ten year statute by adverse possession, and twenty years which would presume a grant.

The trial court recognized that appellant's claim to the property in question was based upon adverse possession, and not upon paper title. The jury was charged:

"When you claim adverse possession for 10 years and no longer than ten years, you must show you personally had possession, not somebody else, that you, personally, had possession. Of course, by personal I mean anybody else you authorize, your tenants if you operate a farm, your tenants would be your possession, but a person claiming under the 10-year statute cannot show John Smith had it for one year and John Jones had it for eight years and I had it for two years to make up the 10-year period, but the 10-year period must be entirely in your possession, one claimant with one exception, and that is that if you inherited the property the sole heir at law of your father or your mother and inherited from them you can take (tack) the time your father had it and the time you have held it to make up the 10 years, but in no other way. For instance, if your father held property for so many years and he should die without leaving a will and he had several children and one of the children took all of it, as brothers and sisters that could not be added together. It is only when an ancestor and the heir or heirs of that ancestor jointly claim can the two periods be added together."

The Court in effect instructed the jury that a person claiming under the 10-year statute could recover by adverse possession only when the possession is in one claimant for the 10-year period, with one exception. The exception quoted is that, "* * * if you inherited the property *the sole*

*heir at law* of your father or your mother and inherited from them you can take (tack) the time your father had it and the time you have held it to make up the ten years, but in no other way." (emphasis added) The court went on to say that if the father should die leaving several children and one of the children took all of it, then the adverse possession of the father and the continued adverse possession by the one child could not be tacked.

When Mr. Oliveros died he left his wife and two children. One of the children, Mrs. Terwilliger, is the appellant in this case; that there was a son, Lewis Oliveros. The son, however, was not residing on the premises, and had not been for several years prior to the death of his parents.

We held in the case of *Wells v. Coursey,* 197 S. C. 483, 15 S. E. (2d) 752, 755, that in a tenancy in common, each tenant in common with his cotenant has the right to the possession of the premises, and the possession of one tenant in common is the possession of all. The court went on to say:

"In order that one of several cotenants may acquire title by adverse possession as against the others, his possession must be of such an actual, open, notorious, exclusive and hostile character as to amount to an ouster of the other cotenants."

It is stated in 2 C. J. S., Adverse Possession, § 130d, page 690:

"Where a single heir continues the occupation he had maintained under his ancestor who was an adverse holder, it will be presumed, nothing appearing to the contrary, that the possession of this heir is for the benefit of all the estate and in the right of the other heirs as well."

In our opinion, the eror complained of is a substantial one which may well have confused the jury and resulted in prejudice to the plaintiff. Because if appellant was claiming solely in her own right her possession could be tacked to that of her parents, provided the evidence tended either to

sustain an ouster of her cotenant, or that her possession was also the possession of her brother, Lewis Oliveros, as cotenant and equally for his benefit.

In our opinion, a new trial should be granted; and it is so ordered.

Judgment reversed.

BAKER, C. J., and STUKES, TAYLOR and OXNER, JJ., concur.